Good morning. May it please the Court, I'm Lowell Sturgill from the Department of Justice, representing FBI agent Michael Gneckow. Gneckow. Thank you. And Mr. Gneckow has been sued in his individual capacity for damages under Viven's theory. And if it would be okay, I'd like to reserve two minutes of my time for rebuttal. Agent Gneckow was the lead agent on a criminal investigation of an individual who was being investigated for potential visa fraud. And the same day that Mr. al-Hussein was being investigated, the same day that his detention hearing ended, Agent Gneckow learned from another agent that the plaintiff had bought a one-way ticket to Saudi Arabia that would be leaving the country about a month before the al-Hussein trial was scheduled to begin. At that point, Agent Gneckow You know, on that ticket, within the next year or two, he could have done some follow-up, couldn't he? He could have. The district court found that he didn't need to go beyond what he did. I know that, but that's not a that's subject to de novo review. Well, first of all, he did do some things. He called Dulles, this is Agent Gneckow, called Dulles Airport and confirmed the date of the ticket, and confirmed the date would be May 16, I believe, which is within a month of when the trial was to begin. And the Agent Gneckow also consulted with the assistant U.S. attorney who was handling the al-Hussein case, that's Mr. Lindquist, and told him he thought there might be probable cause for a material arrest warrant. And Lindquist agreed and said, you better try to call him at home, try to locate him in his Washington State home to see if he really is leaving. So then Gneckow made efforts. Gneckow made efforts. Well, what were those efforts? He didn't recall exactly what they were, but he was very confident that there wasn't much to them. Pardon? In the long and the short of it, there wasn't much to those efforts.  There was nothing to those efforts. That's not a fair inference. Well, what is a fair inference? What were the efforts he made? He didn't specify what they were because it had been years ago and he couldn't recall, but he was very adamant about the fact that he had made a reasonable effort to contact him and couldn't. And, in fact, he couldn't have anyway because the plaintiff's brief showed that Alcott had left home and traveled to Dulles, Virginia, for the flight. So even if he had tried, he couldn't. But, again, he made reasonable efforts to contact and he couldn't. But the key fact, again, is that shortly before this trial, for which the government reasonably believed that Mr. Alcott had material evidence, it would have been a material witness, they find out he's booked what they're told is a one-way flight out of the country. Now, at that point, they have to decide what to do. And the statute says they're supposed to be able to get a material witness to warn if they can show that otherwise it may be impractical to obtain this individual's testimony. Clear, this here shows that. The only thing they could have done is go to the airport and try to give him a subpoena. But that wouldn't assure us. Ginsburg. Could I just start you back just with something I was struggling with throughout this case, which is the procedural posture. We have two different summary judgment motions, correct? So we had cross motions for summary judgment and we have Alkid's summary judgment motion, which was granted, and your Klein-Gineko's summary judgment motion, which was denied. And we look at the facts differently depending on which summary judgment motion we're looking at. Isn't that right? So we look at the facts of the light most favorable to the non-moving party. So maybe you could start by telling me which summary judgment motion you want to argue. And so how are we looking at the facts? Certainly. Well, our primary argument is that the Court should have granted Agent Gineko's summary judgment motion and denied. Okay. So we look at the facts in favor, in the light most favorable to Mr. Alkid, correct? With respect to that motion, yes. Okay. So the question there would be, at least one of the questions would be, as I understand the standard, is whether if we add in all of the information that Mr. Alkid says should have been in his affidavit, would there nevertheless still be probable cause. Is that correct? That's correct. Okay. So can you explain why, in your view, there would still be probable cause, taking all the facts in the light most favorable to Mr. Alkid? Sure. Well, first of all, the facts that did demonstrate probable cause, I think I've already talked about. And that is the one-way ticket, the fact that the ticket was bought shortly after the – shortly before the trial was to begin and was to a foreign country. So it's not like the person would be in another State and could go get them there. There's no extradition treaty with Saudi Arabia. Once he leaves, he's gone. So those are the facts, the main facts that support probable cause. And the three omissions to which you referred, one is the fact that Alkid was a United States citizen, and the second was the fact that he had family ties in the country. And Agent Genecco and Agent Mace, who was the agent who actually submitted the Warren affidavit, both testified that those facts, in their recent opinion, would not undermine probable cause here, because in their experience, they have people leave the country all the time. Well, what's the test to get a material witness affidavit? That you think somebody's going to leave the country? That's all you have to show? That it may be impracticable to secure his testimony for trial? Well, don't you have to show that the person, as opposed to just leaving, is attempting to flee? No, absolutely not. That's not what the case law requires? That's not what you understand the case law to be? You just have to show the person's about to leave. Depart. Well, that may not come back. I mean, it may not be that Mr. Alkid was fleeing, but the question is, once he goes, is he going to come back for the trial? And that's what we don't know. In fact, and particularly when the ticket is a one-way ticket, the inference is he may not come back within the 30 days. Maybe he'll come back, but the question is, we don't have to prove that he'll never come back. The question is, what's going to happen in the next 30 days? And it's reasonable, it's a reasonable judgment to make that judgment. No, but what's the basis of saying he may not come back? Why couldn't you, you know, contact him in wherever his entire arraignment says, we need you back for the trial? Why won't he come back? What's the showing? What? You don't know whether he wouldn't come back if you asked him, would you, do you? No. Well, then you haven't made a showing that he won't come back. That's not our burden. The burden is to show that he may not come back. Well, what shows that he may not come back? Just because he left? The fact that he left is all you need to show that he may not come back? And that he may not have wanted to present testimony at this trial. I know, but you said you have to show that he may not come back. What is the showing you made that he may not come back? Just that he left, right? That he bought a one-way ticket, that he left, that he had material testimony that he may not have wanted to provide at this hearing because of what would have come out, and that's sufficient under the circumstances. But I should say also that the way this process works, the arrest warrant is only the first stage. Mr. Alkidd had the right to a prompt judicial hearing after that, at which everything could have come out. He's entitled to be represented by counsel. And the point is, stop him from getting on the plane. Get him before a judge. Get him counsel. Okay, let's figure out whether he can be released on conditions. Let's get back to Judge Ikuda's question. So what are the facts now on this motion? One, you said he had a one-way ticket. What else? He had material testimony that he could have provided at the trial. No, no, no. We're talking about what could be added or subtracted from the affidavit. Right? Wasn't that your question? Well, so there's the two prongs, the probable cause prong, whether there's a constitutional violation or not. And I think I understand your position, which is that there is probable cause merely because of the one-way ticket and the flight to Saudi Arabia where there's no extradition. And I guess the other prong would be whether it was the omissions were intentional, deliberate, et cetera. So I guess taking the – again, taking the facts in the light most favorable to Mr. Alkidd, how would you discuss that prong? Well, again, you have to look at what the three particular facts were. And this Court, importantly, has said that, first of all, that an agent does not need to include all kinds of background information in a Warren affidavit in order to make it reasonable. And second, the Court has said, with respect to omissions in particular, the Court has not drawn clear lines about what is material and what is not. It's hard to know when you draft an affidavit whether background information is sort of this, which all the law enforcement agents agreed was not material information, and so did the AUSA. So the magistrate judge seemed to think it's obvious that that information should have been there. I guess the AUSA, the federal prosecutor, thought it wasn't – he said, I was aware he was a citizen and had family. I didn't think that was significant. Now, the Supreme Court has told us that we defer to prosecutors when the agent talks to the prosecutor, I think in Melinda Messerschmidt's case. But how does it cut that the magistrate judge at least thought it's obvious he would have wanted to know that information? Well, the same thing happened in the Crow case from this decision and from this Court. And this Court said that merely because a magistrate has what it called 20-20 hindsight – I'm not saying that's what the magistrate judge did here, but merely because the facts don't turn out so well for a government doesn't mean that you can look back and conclude that, you know, there wasn't probable cause at the time. I wanted to also – you've adverted to other things. There's a second reason why Agent Janecka was entitled to qualified immunity here, somebody judging us, the qualified immunity standard, which the Supreme Court in Saussure has held as an additional element. Yeah, but in this kind of case, it almost collapses into one. I don't think there's too much distinction. There absolutely is, Your Honor. The courts have said that, you know, the question is would the case law have put a reasonable officer, every reasonable officer, on notice that these supposed omissions would have defeated probable cause. And the case – there's no case that would have put Agent Janecka on notice of that. In fact, the case law goes the other way. Let me get back to Judge Yakuta's question now. There's other information, I think, that goes to the showing of probable cause that the agent could have put into the affidavit, but didn't, isn't there? Besides the two you mentioned, the one-way ticket, you know, and the – well, he's got family ties and he's a citizen. There are other things you could have put in, not you, me, and your client, right? The third thing the district court noted was that the – that Mr. Alkit had voluntarily spoken with law enforcement in the past. Well, you know, he'd been interviewed twice by the FBI, right? Right. And the Second Circuit in the Al-Wadalah case in a certain – And further, further, he had never been told, well, let us know what you are. We especially want to know if you have probable cause. He was never told anything like that was in his interviews. Well, the record explains why he wasn't, because he had gone to the press the first time he had talked to government investigators, and they were afraid that if they talked to him again, he would deep-six the – not deep-six, but he would say something that would damage the Al-Hussein criminal investigation. So that's why they didn't talk to him before. And they did try to find – Mr. Ginecco did try to contact him before he submitted the warrant affidavit. He called the home or didn't call, but he made efforts to contact him in Washington and couldn't. But, again, this Court, again, has held that if an agent consults with a prosecutor, as Ginecco did here, that is objectively proof of reasonableness without more. Well, it depends on how much explanation of the background the agent gives to the prosecutor, right? Well, here we – I know if the prosecutor is not fully informed, then obviously can't give, you know, complete advice. Well, with all respect, you can, because Agent Linc – AUSA Linc was testified that even if the affidavit had listed the three elements the district court said were omitted, the U.S. citizenship, family ties, and past cooperation, he still would have thought that the affidavit supplied probable cause. So Lombardi and those cases are directly on point here. I would like to reserve the rest of my time for rebuttal. All right. Good morning, Your Honors. May it please the Court, Lee Gallant on behalf of Mr. Elkid. Let me – let me just jump into the conversation at a few places. Could you start, though, by advising us which summary judgment motion you're talking about and so which – how we're looking at the facts? Right. Actually, that's where I was going to start. I appreciate it. Thank you. There are two summary judgment motions. We prevailed, as you said, and the government is seeking to have their summary judgment motion granted or a new alternative to send it back. One thing I want to emphasize is in this case, I don't actually think there's a difference between which one we're talking about. And the reason is this. The district court made very extensive factual findings. It said these are the facts and they're undisputed. These are the facts and they decide the issue. The government did not take issue with a single fact. So they are here on appeal saying we accept the facts, but we disagree with the legal conclusions, and that's why I don't think it matters. And I think that's a critical, critical point. And so what we have here, then, is a situation where Agent Ginecco and the U.S. Attorney asked Magistrate Williams of Idaho to do a very, very serious thing, to authorize the arrest of an innocent United States citizen. And there's no question, Mr. Alito, it was innocent, never been charged, never been convicted. That's a very, very serious thing. Kagan. Well, innocence isn't part of the standard for the material witness statute. That's just whether it may be impractical. Right. But it's a very serious step, because we're not talking about someone who's – I think that's exactly right, Judge O'Connor, but it's a very serious step to arrest just a witness. But as Judge Lodge said, Magistrate Williams was simply not told all the facts. He was not told all the story. Numerous, numerous facts, and I want to get to that, were left out, and the affidavit was misleading. It simply implied that Mr. Al-Kid was a suspicious person who the FBI had no relationship with, who was leaving, who was probably a foreign national of Saudi Arabia. The truth is, and this is what Agent Ginecco knew but did not put in the affidavit, he knew Mr. Al-Kid was a United States citizen. He knew he had substantial family in the U.S. He knew he had substantial ties to the U.S., had been a star football player at Idaho. He had cooperated with the FBI. He had never refused to meet with the FBI. On two occasions, he had extensive interviews without counsel. He had never been told not to travel or to call the FBI if he wished to travel. He had never been told he might be needed as a witness, and he hadn't heard from the FBI in eight months. So if the question is, and it seemed to me when I read the briefs that the case in part turned on whether we thought, the Court thinks, that this evidence that was not put into the affidavit, first of all, eliminates the probable cause of what was put in the affidavit, but that it's obvious that that information is relevant to probable cause. And is that just a matter, there's no case law one way or the other, right? So is that just a matter of, it's obvious that someone who is a citizen with family in the country won't leave and not come back in time for trial? Do we just have to say, well, it's obvious that that's the case? Or should we defer to hear what the government says? We don't think that makes any difference. In our experience, people who are citizens with family in the United States will leave and not come back in time all the time. How do we evaluate that? Your Honor, I think you're getting to the core question here. I think, and let me take issue with one of your premises, that there's no case law. And then the second point is in terms of the government is sort of asking for deference. And I think that goes, let me start with that. That goes to a fundamental point here. Agents all the time use their expertise and want to make assumptions. And when they're engaging in warrantless arrest on the spot, we just simply have to let them go ahead. And we'll review it afterward. But the warrant situation is completely different. The entire purpose of the warrant clause in the Constitution, the entire purpose of the warrant procedure is the agent has to spell out the facts. And this Court has said it over and over at Illinois' Begate and Supreme Court. It is black-letter law that the magistrate must make an independent judgment. So if Agent Shinneko thought, well, I have experience of people not coming back, he needs to spell out all those facts. Has that someone who's cooperated in the past, has substantial ties to a number of people not to travel? And let the magistrate make an independent judgment. Had the magistrate been given all those facts, had the magistrate not been left without those facts, it would have triggered multiple questions. Judge Kishima said it would have been, well, you said you'd get a drive-by at his house while you've been in contact with him for three years. Did you call him? Did you call his mother when you've been to his house? Did you call all these people to ask him, maybe Mr. Alkid, and he certainly would have, but maybe Mr. Alkid would have voluntarily postponed his trip. Maybe he would have voluntarily given up his passport. Maybe Magistrate Williams, as he did in another case, had the passport seized because the government is claiming only that the trip abroad. But let me go to your second point, Judge Akuta, about the case law. And I think there's two sets of cases. One is the standard set of cases that you have to give the magistrate all the facts, the whole story. Let the magistrate make an independent judgment over your questions. Though aren't there cases where we've said that? There are things that really are obvious, like if you're going to do an investigation of a house, a search of a house, because it belongs to a criminal, but when you go to the house, it has a sold sign on it. That you should probably tell the magistrate judge. But I guess I don't see, particularly for what to admit, obviously you can't tell the whole story because you can't start in, you know, he favors blue ties, and he often wears. Right, right. So you can't tell. You have to make a selection of what you think is material. And so the question is, to you, it's obvious that this was material, and the magistrate judge indicated as much. The officers, based on their experience, said, I don't think this is material, as the prosecutor said. So how do we determine whether it's obviously material or not? Let me come to that, Your Honor. That's the second set of cases. This court, in Bacon, and then followed by Barnesburg, have the two leading material witness cases in the country. And regardless of the rest of the country, certainly in this circuit, it has been very clear about the law. And the standard, as Judge DeCheney said, and as government has incorrected this respectfully, it is not whether someone may not come back. That would mean US citizens can all the time be arrested. In Bacon, the Bacon standard is, is it likely they will disobey a subpoena. In Bacon, the person actually tried to avoid the police. And this court specifically said, there is no question that the interest could be drawn that Ms. Bacon wishes to flee to avoid apprehension. The court also noted that Ms. Bacon had money and contact with fugitives. And what the court said pointedly was, there's no question that Ms. Bacon is capable of evading a subpoena if she wants to. The question is, is she likely to do so? In this case- Well, here he left. I mean, he had the intention to leave. You know, that was not disputed. And I think he's absolutely clear on that. And as you put it, he was leaving. The government tried to imply to Magistrate Williams, and again here, that he was fleeing. That's the crux of the pyramid. Those are completely different things. If he had a return flight, though, wouldn't that have changed the calculus? Well, he did have a return flight, but let me even put that aside. He had a- I thought it was an open ticket and there was no return, that that was undisputed. He would always go to school or go for a long business trip, probably wouldn't pick the exact time of day. But let me put that aside for the moment. The question is, as Magistrate Williams and Judge Lodge said, the gap at David was completely cleansed. Every single fact that would have indicated that Mr. Alkid was a cooperative U.S. citizen with substantial ties, it had to be more than just, he's leaving. That's an innocent trip. And if the government had made any inquiry, they would have found that out. But even if they didn't know that, it's an innocent trip and there was not a single thing in the affidavit affirmatively suggesting that Mr. Alkid would not comply with the subpoena. And again, Your Honor, the options were available to the government to ask him to voluntarily postpone his trip, which any U.S. citizen would have done in that situation if the FBI really said we need you to do it for a day or two. They could have taken his passport. They could even ask Judge Williams to seize his passport. But they can't say, we think it may be that he won't come back. That would mean that any businessman going on a trip to China without an extradition treaty could be arrested simply because he's going and didn't purchase his round-trip ticket yet. There was nothing. I mean, think about an agent who's sitting down to write this affidavit and saying, should I tell the magistrate he's cooperated fully in the past? I mean, in the sense that he's made every meeting. No, I won't tell him that. Should I tell him he was a U.S. citizen? No, I won't tell him that. Should I tell him he has substantial ties in the U.S., family, wife, mother, child? No, I won't tell him that. Should I tell him he never told him not to travel so there's no reason to believe it's suspicious? Let me just stop you because I think that's an important point. So talking about your summary judgment, the grant of the summary judgment that the district court gave, in order to prevail, you would have to establish that there was no genuine issue of material fact, not just about the probable cause point, but also about Mr. Ginecco's state of mind. And so your strongest argument, it seemed to me, from the brief was that the omitted information was all information that would undercut the argument that he was fleeing and wouldn't come back. Is there anything else? Because there Mr. Ginecco raises, to raise a genuine issue of material fact, his reliance on the prosecutor, his expert understanding that these issues of being a citizen and having family were not important. So why is there not a genuine issue of material fact on the state of mind requirement or prong? On the recognition point? Uh-huh. And I think the reason is, Your Honor, is that the government, the two factual issues that could be an issue in a case like this are did the agent know about the information? Here, there's no dispute. Agent Ginecco knew about the information. He's admitted it. And the second one is, well, why didn't he put it in? Did he just forget? Did he submit the wrong draft? Did he have some other reason? Here, Agent Ginecco has specifically admitted he just simply thought it wasn't relevant. He thought it wasn't material, as did the federal prosecutor. So going back to your earlier question, Justice Kagan, so I think what we don't have is a factual issue on the table, because we know his state of mind. It was, I didn't think it was relevant. And what we have is a legal question about was it so relevant. And just let me address the question about, well, he consulted with the prosecutor. Judge Lodge was emphatic about this. He has to tell the prosecutor. He can't leave the prosecutor out to dry as well. He has to tell the prosecutor all the facts. He did not tell the prosecutor, Agent A was a linguist, that he had cooperated with the past, the critical facts. Isn't this for the jury? I mean, we've said in case after case that state of mind, intent, goes to the jury. That's a factual issue. It goes to the jury. So Mr. Ginecco can testify, I wasn't being reckless, it wasn't material, here's all my experience showing it's not material. And then the other side can say, your client can say, it's obviously material. And then the jury determines whether he was reckless in omitting this information. Why isn't that correct? No, Your Honor, because I think in the cases you've said send recklessness to the jury, one of two things has been factually in dispute. Did the agent know the information? I mean, with a false statement, it's, you know, did he know what was not the truth. But with omissions, the questions are, did he know the facts? Agent Ginecco has admitted there's nothing sent to the jury. That's an undisputed fact. Judge Lodge found it and the government hasn't challenged it. The second is, why did he put it in? And he is saying it's because I didn't think it was legally relevant. So think about the scenario, you send this case to the jury. You'd be sending the case to the jury and saying, jurors, here's Bacon from our circuit, here's Orangeburg from our circuit, about how we interpret the material witness statute. Try and understand those cases and decide whether agent Ginecco should have known to put the facts in or not.  And that's why I think, unlike a lot of your Franks cases where you do send it to the jury, this is not one of those cases because I think you would not be able to send that type of legal question to the jury. It's analogous to sending a clearly established question to the jury, which this Court in the Supreme Court has said is for the court. And just one more point, Your Honor. The drive-by and that testimony, I mean, you would think if they looked for him they would put it in the affidavit. Let's just assume for the moment, because Judge Lodge found that Ginecco made some attempt, a drive-by or a phone call, that still they didn't look for him in any other way. They didn't call him in any other way. And they still could have, of course, asked him at the airport, give up your trip, let me take your passport, we'll seize your passport. But ultimately, again, the fundamental point is that's something now that Agent Ginecco is saying and may have thought at the time. But again, this case is about what was not presented to Magistrate Judge Williams. He needed to know all the facts. If that had been told to Magistrate Judge Williams, it would have triggered multiple questions, just like this Court in Bravo in Liston said. The magistrate needs to know enough to ask questions. He would have said to Agent Ginecco, oh, you know him, this is a relationship you've had with him, tell me more about it. Could you not contact him any other way? What's the reason? Has he ever cooperated before? All those things would have come out. And Magistrate Williams was emphatic that he would have said, I can't issue the warrant. There's no reason to believe he's likely to disobey a subpoena. The fact that he's going abroad, take his passport, ask him to postpone, or assume there's serious penalties if you disobey a subpoena.  Again, as Magistrate Williams and Judge Lodge said, it is completely cleansed of a single fact in support of Al-Qaida. That is reckless. No agent could have reasonably sat down and said, let me not put in a single fact that suggests we know Al-Qaida. Here's our past experience with him. Here is his copy. Can I ask one question? Although your time is up, I want to ask you this question. Mr. Sturgill said that, well, even assuming everything you said is accurate, correct, and there's a law that still the agent is entitled to qualified immunity. Well, what's your response to that? The reason is because of this Court's decision in Bacon in 1971, which has been the law for decades, and the follow-up in Orensburg. Those cases are crystal clear that the test is, is the person likely to disobey a subpoena, not maybe. Anybody who might conceivably, there has to be evidence suggesting that the person is likely not to disobey a subpoena. I mean, this case is far easier than Bacon in Orensburg. In Bacon, you have someone who knows fugitives, tried to get away from the police. It was clear she didn't want to be apprehended, and still the Court said, well, if she served with subpoena, there's no reason to believe she likely wouldn't disobey. Mr. Al-Qaida did not a single thing to suggest he wouldn't obey the subpoena, not a single thing. So I think in light of this Circuit's law in Bacon and Orensburg, there's no question that the law put Mr. Ginecco on fair notice. He should have told AUSA Lindquist all the facts. But more importantly, he should have told Magistrate Judge Williams all the facts and not misled him. Thank you. Thank you. One additional fact on reasonableness I've not yet mentioned. The Supreme Court in Franks itself said that sometimes agents have to act quickly under the circumstances. And courts are not supposed to, under those circumstances, second-guess their judgments. And here, one of the facts is Ginecco only had basically one day to do what he could. He found out that this guy was leaving in a couple of days. He made calls to Dulles. He confirmed what he could. He talked to the AUSA. He did the affidavit all in about a day. Now, you know, counsel wants him to sit there and in 20-20 hindsight think of all the things that he could have done. But he did what he could under the circumstances. Well, what did we do about the fact that Mr. Ginecco left out of the affidavit only those items that undercut the theory that it may be impracticable or is likely difficult to get him back? Well, that's always the case with respect to cases like this where the plaintiffs say that something should have been in the affidavit. The whole point is, well, if you thought it was irrelevant, you're going to be dealing with the universe of facts that the agent thinks is irrelevant that the plaintiffs think should have been in the affidavit. So that doesn't distinguish this case from any other qualified immunity case. The Bacon case is different because here, again, you've got an individual who's leaving the country on a one-way – leaving the country on a one-way ticket. In Bacon, the person has just been on the rooftop of the adjacent house. You can go get them. Here, if the person goes, he goes. Or you have a person who said, well, I'm willing to testify. Just give me a subpoena. You don't have anything like that in this case. And with respect to – we haven't talked much about the remand issue, but even if you're not willing to hold that Ginecco was entitled to summary judgment, we've asked the Court to remand the case because his – because the plaintiff's – well, which motion question? Because the plaintiff's motion was improperly granted. And our argument there is that the district court did not draw all the reasonable inferences in favor of Agent Ginecco. For example, the district – with respect to the U.S. citizenship, the district court said the silence with respect to that would cause any reasonable backbiter to conclude that the affidavit says, well, this person must be a citizen of Saudi Arabia. Well, that doesn't follow at all to begin with. And again, it's clear that the district court was not giving Agent Ginecco the benefit of the doubt on that key question. And the final thing is the district court made a critical legal error here with respect to the qualified immunity analysis. With respect to Ginecco, it never said at all or articulated what the standard is. The standard is, again, would every reasonable officer have understood that this information was material. It never – never even articulated that. It just went to reasonable, said it's obvious, and that's over. Well, even with respect to Agent Mace, who the district court said was entitled to qualified immunity, the court stated the correct standards there. It just didn't give Agent Ginecco the same benefit of what the correct law is. So you have a fatal legal error that just has to be corrected and has – infects the entire opinion. I believe that I've gone over my time. If there are no further questions. Okay. Thank you. Okay. The case of Al-Kid v. Ginecco is submitted.
judges: Alarcon, Tashima, Ikuta